266 August 7, 2024 No. 551

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

D. R. T.,
*Petitioner-Respondent,*

*v.*

SHAWN CARLSEN,
*Respondent-Appellant.*

Clackamas County Circuit Court
23SK00892; A181614

Ulanda L. Watkins, Judge.

Submitted July 3, 2024.

George W. Kelly filed the briefs for appellant.

Jasmine M. Troncoso filed the brief for respondent.

Before Egan, Presiding Judge, Kamins, Judge, and Walters, Senior Judge.

KAMINS, J.

Affirmed.

**KAMINS, J.**

Respondent appeals a judgment entering a permanent stalking protective order (SPO) against him pursuant to ORS 30.866(1). In his only assignment of error, respondent contends that the trial court erred in finding that petitioner was subjectively alarmed by contact with respondent and in concluding that the alarm was objectively reasonable. We conclude that the trial court did not err and affirm.

Absent *de novo* review,[1] we "view the evidence and all reasonable inferences that may be drawn from it in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record is legally sufficient to permit that outcome." *H. L. P. v. Jones*, 309 Or App 108, 109, 481 P3d 415 (2021) (internal quotations omitted). With that standard in mind, we recount the facts.

Petitioner and respondent were 17 years old at the time of the contested hearing. They were in a relationship from the seventh grade until the beginning of the ninth grade. Although their relationship began as "normal," respondent became increasingly more controlling and aggressive. He told petitioner who she could befriend and what to wear. After her parents became concerned for her wellbeing and she realized that she was in a "toxic" relationship, petitioner broke up with respondent.

After the breakup, petitioner blocked respondent on her phone, though he still corresponded with her through various social media sites. Using Snapchat, he sent petitioner a photograph of himself holding ammunition with a shotgun in the background. He captioned that photograph: "I should just shoot myself." In another instance, after petitioner ignored a Snapchat message from respondent, he sent a large order of pizzas to petitioner while she was staying at a friend's house and had not disclosed her location to respondent.

Communications over different social media sites were not the only contacts initiated by respondent. He and

---

[1] Respondent requests that we review whether petitioner was subjectively alarmed by respondent's contacts *de novo*. However, *de novo* review is reserved for exceptional cases, and respondent does not explain how his request for *de novo* review relates to the considerations identified in ORAP 5.40(8)(d).

a group of his friends egged petitioner's home. He also drove by petitioner's home numerous times a day. In one instance, while she was returning home in her car, petitioner recognized respondent's family's truck coming toward her such that she had to swerve to avoid being hit. That incident was the "last straw," and petitioner filed an SPO against respondent.

In order to obtain an SPO, petitioner must prove that respondent engaged in at least two "repeated and unwanted contact[s]" that subjectively alarmed her as to the threat of physical injury, and that that alarm was objectively reasonable. ORS 30.866(1)(a) - (c). At the trial court, petitioner put forth the following six repeated and unwanted contacts to obtain a permanent SPO: (1) respondent nearly hitting petitioner with his car; (2) respondent sending $200 worth of pizza to petitioner at her friend's house even though she never disclosed her location; (3) respondent driving by petitioner's home several times a day; (4) respondent sending petitioner a photo of himself with a gun; (5) respondent sending petitioner messages about self-harm; (6) respondent and a group of his friends egging petitioner's home. The trial court determined that petitioner "proved her burden" and issued the stalking order. For the reasons discussed below, the record, particularly the incidents involving the truck and the pizza delivery, was legally sufficient to support the trial court's conclusions.

On appeal, respondent concedes that the incident involving the truck may qualify as a contact; however, he argues that petitioner never established who was driving the truck. That argument is unavailing for two reasons. First, it was reasonable to conclude that respondent was driving his family's truck, particularly considering that respondent had been driving by petitioner's home several times a day. Second, respondent's trial counsel apparently acknowledged that respondent was driving the truck by arguing that he may not have intentionally tried to hit petitioner because he was an "inexperienced driver."

As to the pizza incident, respondent contends that the contact was no more than a prank; it did not reasonably create a threat to petitioner's physical safety. However, prior to sending the pizzas, respondent attempted to call or text petitioner to no avail, and petitioner testified that

the pizza delivery was subjectively alarming, because it meant that respondent was tracking her whereabouts and he would threaten petitioner if she "wouldn't come home from" her friend's house. From that evidence, the trial court could reasonably conclude that the contact also was objectively alarming, especially considering respondent's history of controlling and aggressive behavior toward petitioner: in a prior instance when petitioner was with the same friend, respondent sent petitioner a picture of himself holding ammunition with a shotgun next to him because "he got mad" at petitioner for not spending time with him. *See A. A. C. v. Miller-Pomlee*, 296 Or App 816, 828, 440 P3d 106 (2019) (considering "respondent's history of conduct toward petitioner" in concluding that petitioner's alarm, caused by respondent's "tracking" of petitioner, was objectively reasonable). Thus, we conclude that there was sufficient evidence of two qualifying contacts that made it objectively reasonable for petitioner to have been alarmed for her personal safety.

Respondent's second argument is that there was insufficient evidence that petitioner subjectively feared for her personal safety. Respondent contends that the evidence demonstrated that petitioner did not actually fear respondent, because she parked her vehicle near the school bus that respondent uses and that she parked near respondent's vehicle when picking up her siblings from school. We disagree. Petitioner explained that she parked near the school bus because there was a security "camera, and it's the closest exit." She also testified that she "[r]arely" saw respondent, and she did not intentionally park near his vehicle. Finally, petitioner testified that she has anxiety and depression, loses sleep, and is on medication to alleviate mental health problems as a result of respondent's conduct. Thus, the trial court's finding that petitioner does not "feel safe" is supported by the record.

The record is legally sufficient to support the trial court's determination that the unwanted contacts caused petitioner alarm and that that alarm was objectively reasonable.[2]

Affirmed.

---

[2] Our conclusion that the truck and pizza delivery incidents satisfy ORS 30.866 obviates the need to address respondent's other contacts.